UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOSHUA G. STEGEMANN,

                Petitioner,

    v.                                                  9:20-CV-1247
                                                             (LEK/TWD)

WARDEN,

                Respondent.

---

APPEARANCES:                                                    OF COUNSEL:

JOSHUA G. STEGEMANN
Petitioner, pro se
20552-052
Ray Brook Federal Correctional Institution
P.O. Box 900
Ray Brook, NY 12977

HON. CARLA B. FREEDMAN                          EMER M. STACK, ESQ.
United States Attorney for the                            Ass't United States Attorney
Northern District of New York
Attorney for Respondent
DOJ-USAO
100 S Clinton St
Suite 9000
Syracuse, NY 13261

THÉRÈSE WILEY DANCKS
United States Magistrate Judge

**REPORT-RECOMMENDATION and ORDER**

**I.   INTRODUCTION**

      Petitioner Joshua G. Stegemann ("Petitioner") seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241. Dkt. No. 1, Petition ("Pet."). On October 14, 2020, this

1

action was administratively closed due to Petitioner's failure to properly commence it. Dkt. No. 2, Order Directing Administrative Closure.  Petitioner was advised that if he desired to pursue this action he must so notify the Court and either (1) pay the filing fee of five dollars, or (2) submit a completed, signed, and properly certified in forma pauperis ("IFP") application, within thirty days of the filing date of that Order.  *Id*. at 2. Petitioner subsequently paid the filing fee and the case was reopened.  Dkt. Entry dated 10/22/2020 (identifying receipt information for the filing fee transaction); Dkt. No. 3, Text Order (restoring case to the Court's Active Docket).  Respondent opposed the petition. Dkt. No. 8, Response; Dkt. No. 8-1 Declaration of Magnusson; Dkt. No. 8-2, Exhibits ("Ex.").  Petitioner filed a reply.  Dkt. No. 10, Traverse.

## II.   BACKGROUND

On July 20, 2016, Petitioner was sentenced to an aggregate sentence of 360 months imprisonment followed by a life term of supervised release in the Northern District of New York.  Ex. at 3-4.[1]  Petitioner is currently incarcerated at the Federal Correctional Institution in Ray Brook, New York.  Pet.  Prior to his placement in Ray Brook, New York, Petitioner was incarcerated at the Federal Correctional Institution in Berlin, New Hampshire.  *See* Pet.; Ex. at 7.[2]

On May 17, 2020, Petitioner filed an Informal Resolution Form wherein he reported "[t]he [p]ortions in the [Special Housing Unit (")]SHU[") f]eed [t]rays are [m]iniscule[;]" he "ha[d] lost a drastic amount of healthy body weight [as a] consequen[ce] [*sic*] [of] Food Services['] withholding of adequate portions[;]" and his

---

[1] Citations to the parties' submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.
[2] Petitioner was transferred to FCI Ray Brook on August 11, 2020.  Ex. at 7.

2

"health [wa]s failing because [he was] not being properly fed[.]" Ex. at 29. According to an Incident Report written by Corrections Officer ("C.O.") F. Aubut, which has since been expunged, on May 18, 2020, around 10:15 a.m., Petitioner and several other inmates refused their lunch meal. Ex. at 26. C.O. Aubut stated "[t]he inmates who refused their meal did not voice why they did not want their meal but would gesture they were not accepting the food tray." Ex. at 23. A copy of Aubut's Incident Report was delivered to Petitioner that afternoon at 2:34 p.m. Ex. at 26.

Later that day, officers reported multiple inmates, including Petitioner, again refused to accept meal trays when Corrections Officers attempted to deliver dinner to the inmates' cells. *See* Ex. at 18-19, 24-25. C.O. J. Becker wrote an Incident Report dated May 18, 2020, at 6:10 p.m. Ex. at 18-19. The Incident Report noted some of the inmates "also refused to accept their lunch trays on the same date . . . according to the SHU Lieutenant." Ex. at 18. Because the Incident Report referenced information learned from the SHU Lieutenant, the investigator advised C.O. Becker to obtain a memorandum from the Lieutenant and paused the investigation until he received said memorandum. Ex. at 21.

A copy of C.O. Becker's Incident Report was delivered to Petitioner by Lieutenant Sloan on May 20, 2020, at 5:30 p.m. Ex. at 18. After being advised of his right to remain silent, Petitioner told Lieutenant Sloan he had "[n]o comment" on the report. Ex. at 20. Following his investigation, Lieutenant Sloan concluded the report should be forwarded to the Unit Disciplinary Committee ("UDC") for further review. Ex. at 20. Petitioner provided a written statement to the UDC wherein he argued, *inter alia*, the Incident Report was not timely served; C.O. Aubut's Incident Report concerning

Petitioner's alleged refusal of a meal tray at 10:15 a.m. on May 18, 2020, was expunged following a Discipline Hearing Officer ("DHO") hearing; C.O. Becker's Incident Report was "baseless" because he was not on B-Range when the evening meal was distributed; and Petitioner was free to forgo a meal if he wished to do so and did not communicate to staff that he was engaged in a "hunger strike." Ex. at 30.

The UDC referred the charge to a DHO for a hearing. Ex. at 31-33. On May 24, 2020, case manager R. Rouleau provided Petitioner notice of the discipline hearing and advised Petitioner of his rights. Ex. at 31-33. Petitioner requested Corrections Officers Wallace, Roy, and Aubut testify at the hearing. Ex. at 32.

The DHO conducted a disciplinary hearing on June 11, 2020. Ex. at 12. Petitioner appeared at the hearing, accompanied by Case Manager Jordan. Ex. at 12. Petitioner denied the charge of "Engaging in or Encouraging a Group Demonstration" stating the "[s]imple truth is I didn't refuse my tray. I begged to get back out to general population. I didn't say anything to anyone about anything." Ex. at 12. When asked why he refused meals on May 18, 2020, Petitioner answered, in part, "I can't get in trouble for not eating." Ex. at 12. Petitioner also reportedly told the DHO the "[b]ottom line [is], I didn't group up with anybody. I didn't break a rule and didn't do a hunger strike. At the end of the day I didn't refuse my tray." Ex. at 12.

Officers Aubut, Roy, and Wallace did not appear at the hearing but each submitted memoranda concerning the incidents they witnessed. Ex. at 12; 23-25. DHO N. Hayden concluded, "based on the greater weight of [the] evidence . . . [Petitioner] committed prohibited act 212; Engaging in or Encouraging a Group Demonstration." Ex. at 16. In adjudicating the charge, the DHO relied on: C.O. Becker's Incident Report;

supporting memoranda submitted by SHU Lieutenant D. Hensley, C.O. Aubut, C.O. Wallace, and C.O. Roy; the SHU Record; video depicting the B-range in the SHU; the Informal Resolution Form submitted by Petitioner; and Petitioner's statements at the hearing. Ex. at 13-16. The DHO imposed sanctions including a loss of twenty seven days of Good Conduct Time ("GCT"). Ex. at 16.

A copy of the DHO's report was delivered to Petitioner by DHO Secretary S. Fillion on June 15, 2020, at 11:55 a.m. Ex. at 17. Petitioner filed a Regional Administrative Remedy Appeal arguing, *inter alia*, "[t]he sanctions and guilty finding should be expunged outright because the DHO conflates the expunged lunch-meal incident . . . with the . . . dinner meal incident." Ex. at 43. In a response dated December 4, 2020, the Regional Director denied Petitioner's appeal finding "[t]he DHO reasonably determined [Petitioner] committed the prohibited act" and "[a] review of the disciplinary proceedings revealed no due process concerns or deviations from policy." Ex. at 44. Petitioner appealed the Regional Director's response by submitting a Central Office Administrative Remedy Appeal to the National Inmate Appeals Administrator in the Office of General Counsel, but has not received a response; therefore, Petitioner's appeal is deemed denied for the purpose of exhaustion of the BOP's Administrative Remedy Program. *See* Pet. at 4; Dkt. No. 8-1 ¶ 17.

### III. PETITION

Petitioner challenges the DHO's Report finding him guilty of engaging in a group demonstration and seeks expungement of the report and restoration of twenty-seven days of GCT. *See generally*, Pet. Petitioner contends his due process rights were violated when: (1) Petitioner was served a copy of the Incident Report more than

5

twenty-four hours after the incident occurred; (2) the DHO found Petitioner guilty despite conflicting reports of the details of the incident; and (3) disciplinary proceedings were commenced in retaliation for Petitioner's filing of an Informal Resolution Form immediately prior to the charged incident.  Pet. at 2-4.  Respondent avers Petitioner was afforded all process he was due, because: Petitioner was served a copy of the Incident Report in a manner that comported with due process requirements; the DHO Report was supported by sufficient evidence; and Petitioner has failed to allege facts sufficient to support a claim of retaliation.  See generally, Dkt. No. 8.

## IV. DISCUSSION

Habeas corpus relief is available if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction."  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citing *Chambers v. United States*, 106 F.3d 472, 474-75 (2d Cir. 1997); *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n. 5 (2d Cir. 1991)).  Federal prison inmates are "entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement that imposes an atypical hardship."  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974); *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004)); *see also Rodriguez v. Lindsay*, 498 F. App'x 70, 71 (2d Cir. 2012).  Therefore, a "petition to expunge the Bureau's disciplinary sanctions from his record, including the loss of good time credits . .

. is properly brought via an application for a writ under § 2241." *Carmona*, 243 F.3d at 632 (citations omitted).

### A.     Service of the Incident Report More than Twenty-Four Hours after the Incident did not Violate Due Process

In support of his challenge to the DHO's disciplinary report and imposition of sanctions, Petitioner avers Officer "Becker's report was served in excess of 24 hours after the alleged incident in violation of the Federal Bureau of Prisons (FBOP) policy statement 5270.09, Chapter 2, and 28 C.F.R. § 541.5[.]" Pet. at 2; *see also* Pet. at 4 (discussing "Becker's belatedly served disciplinary report in spite of FBOP policy 5270.09, Chapter 2's and 28 C.F.R. § 541.5's rule that disciplinary reports must be served within 24 hours of the alleged incident."). Respondent contends the relevant statute was not violated, and, even had it been, noncompliance with BOP regulations without more does not constitute a violation of Petitioner's due process rights.

Due process requires that federal inmates "be given: 'advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.'" *Rodriguez v*, 498 F. App'x at 71 (quoting *Sira*, 380 F.3d at 69 (citing, *inter alia*, *Wolff*, 418 U.S. at 563-67)). "[I]n the context of [inmate] disciplinary proceedings, 'the *only* process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*." *Rodriguez*, 498 F. App'x at 71 (emphasis in original) (quoting *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004)). Therefore, "to the extent internal prison regulations grant protections beyond the constitutional minimum, noncompliance with those regulations do not typically offend

7

due process." *Agosto v. Hufford*, No. 1:13-CV-4082, 2014 WL 2217908, at *3 (S.D.N.Y. May 8, 2014), *report and recommendation adopted*, 2014 WL 2217925 (S.D.N.Y. May 29, 2014) (citing *Rodriguez*, 498 F. App'x at 71) (additional citations omitted); *see also Scott v. Craig*, No. 9:05-CV-1359 (LEK/VEB), 2008 WL 4866051, at *4 (N.D.N.Y. Nov. 7, 2008) (explaining, "the deadlines set forth in the applicable regulations are not mandatory and refer to the time period in which proceedings should 'ordinarily' take place") (citing 28 C.F.R. § 541.15(a)) (additional citation omitted).

      In the instant matter, Petitioner was delivered a copy of C.O. Becker's Incident Report on May 20, 2020, three weeks prior to the DHO's hearing. Ex. at 18. "The only constitutional requirement implicated by the notice of disciplinary charges is that the inmate receive notice of the charges against him 24 hours prior to the hearing." *Williams v. Menifee*, No. 1:05-CV-4045, 2006 WL 2481823, at *5 (S.D.N.Y. Aug. 25, 2006), *aff'd*, 331 F. App'x 59 (2d Cir. 2009) (citing *Wolff*, 418 U.S. at 563-64). Therefore, the timing of the delivery of the Incident Report did not violate due process. *See e.g.*, *Berkun v. Terrell*, No. 1:11-CV-3237, 2011 WL 4753459, at *3 (E.D.N.Y. Oct. 7, 2011) ("[Petitioner] provides no authority, and the Court has found none, that stands for the proposition that BOP failure to meet regulatory deadlines, without more, renders a prison disciplinary proceeding inconsistent with due process . . . particularly where, as here, the petitioner suffered no prejudice by the delay.").

      **B.**    **The DHO's Conclusion is Supported by Sufficient Evidence**

      "[J]udicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" *Sira*, 380 F.3d at 69 (citing *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (holding "the requirements of

due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits.")); *see also Rodriguez*, 498 F. App'x at 71 (same). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (citation omitted); *see also Sira*, 380 F.3d at 69 ("[t]his standard is extremely tolerant and is satisfied if 'there is *any* evidence in the record that supports' the disciplinary ruling.") (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).

In support of its findings, the DHO first relied on J. Becker's written account of the incident. *See* Ex. at 13. In the Incident Report, Becker stated:

> On May 18, 2020 at approximately 4:15 P.M., while serving the dinner meal . . . there were five inmates that refused to accept their dinner trays . . . The inmates involved stated their reasons for not accepting the dinner meal was due to an undesirable portion size . . . The inmates involved conferred with one another and colluded in protest due to their belief of how the food should be served and in what quantity/quality. These five inmates agreed to participate in a demonstration by not accepting the meals at lunch and dinner in order to be heard by either the Food Service Administrator or the Warden.

Ex. at 18. Petitioner was listed as one of the five inmates. *Id*. The DHO further relied on "Video [of the] B-range in the Special Housing Unit" which showed "Officer Becker . . . was present during this incident . . . and was observed at the front of the range." Ex. at 14. Special Housing Unit Records further indicate Officer Becker reported Petitioner refused his dinner on May 18, 2020. Exhibit D, Special Housing Unit Record. Ex. at 27.

9

Officer Becker's Incident Report, based on his firsthand knowledge of the events and corroborated by video footage and SHU records, constitutes sufficient reliable evidence to support the DHO's determination. *Hinton v. Prack*, No. 9:12-CV-1844 (LEK/RFT), 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) (concluding the "some evidence" standard was satisfied where the disciplinary determination relied on a misbehavior report authored by the officer personally involved in the incident based upon the officer's firsthand observation of the incident). Therefore, the record evidence demonstrates the DHO's decision was supported by "some evidence" as due process requires. *Hill*, 472 U.S. at 457 ("[a]lthough the evidence in this case might be characterized as meager . . . the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."); *see also, e.g.*, *Payne v. Coburn*, No. 9:15-CV-0392 (GLS/TWD), 2017 WL 4330372, at *14 (N.D.N.Y. Aug. 29, 2017), *report and recommendation adopted*, 2017 WL 4326079 (N.D.N.Y. Sept. 27, 2017) (decision was supported by "some evidence" sufficient for due process where the hearing officer "relied primarily on the body of the misbehavior report" written by a C.O.) (internal quotations omitted) (citing *Hinton*, 2014 WL 4627120, at *15; *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010)); *Murray v. Prack*, No. 9:14-CV-1094 (BKS/CFH), 2016 WL 11480161, at *6 (N.D.N.Y. Aug. 15, 2016), *report and recommendation adopted*, 2016 WL 5372829 (N.D.N.Y. Sept. 26, 2016) (finding the "some reliable evidence" standard was satisfied where the disciplinary hearing officer "based his decision on two reliable sources of evidence . . . the written incident report prepared by [a] C.O. . . . [and] his own review of the audio recordings from the incident in question[.]").

The DHO also relied on memoranda submitted by staff members D. Hensley; F. Aubut; R. Wallace; and J. Roy.  Ex. at 13-14.  Petitioner avers "the 2 guards that distributed the meals -- C.O. Wallace and C.O. Roy -- directly contradict the claims of Becker, who did not distribute the meals."  Pet. at 3.  As an initial matter, Petitioner's claim that Officer Becker was not present when dinner meal trays were distributed is unsupported by the record.  *See* Pet. at 3 (claiming Officer Becker "did not distribute the meals"); Traverse at 2 ("Hensely was not present nor serving the SHU food trays at 4:15 PM on May 18, nor was Becker.").  As discussed above, Officer Becker's Incident Report, SHU records, and video evidence reviewed by the DHO each provide some evidence that Officer Becker was, in fact, present for the attempt to serve food trays at or around 4:15 p.m. on May 18, 2020.

In his supporting memorandum, Senior Officer Specialist J. Roy reported that "[o]n May 18, 2020 at approximately 4:15 P.M., while serving the dinner meal . . . [Petitioner and another inmate] were given the opportunity to have a dinner tray and both inmates refused to take the dinner trays."  Ex. at 24.  According to the memorandum, Petitioner "did not respond to [the officer] when [J. Roy] ask[ed Petitioner] if he wanted a dinner tray" while the other inmate "shook his head and stated 'NO[.]'"  *Id*.

In another supporting memorandum, Senior Officer Specialist R. Wallace stated "[o]n May 18, 2020 at approximately 3:45 p.m[,] . . . several inmates refused their evening meal."  Ex. at 25.  Wallace listed Petitioner and another inmate housed in cell 114 as two of the inmates who refused evening meals.  *Id*.  Wallace reported when he "came to their cell [Wallace] opened the slot and waited for the[ inmates] to take the

11

trays [but] neither inmate moved forward to get them." *Id*. He further reported one inmate "asked [Wallace] to open the tray to show him what was in it[,] which [Wallace] did[,] and [at] that time he stated he did not want his tray" and Petitioner "stated he did not want his tray as well when asked." *Id*. R. Wallace reported a third inmate in another cell refused his tray as well and "[n]one of the inmates stated a reason for refusing other than they did not want their dinner tray." *Id*.

That the details of the three officers' reports are not identical does not mean the DHO's determination based on those reports is unsupported. While the approximate time and manner of refusal differed, the three reports make clear that Petitioner and other inmates collectively refused dinner meal trays on May 18, 2020. The reports are also consistent with SHU Records, which indicate Petitioner refused two meals that day. Ex. at 27. Moreover, to the extent Petitioner argues he could not have been found guilty if he did not verbally refuse a meal and state a reason for doing so at that time, he is also incorrect. *See McLean v. Terrell*, No. 1:11-CV-0401 RRM, 2012 WL 2457962, at *5 (E.D.N.Y. June 27, 2012), *affirmed sub nom.*, *McLean v. Holder*, 550 F. App'x 49 (2d Cir. 2014) (noting "[w]hile Petitioner maintains that his participation was silent throughout, his own statements corroborate his presence with the group of inmates . . . as well as his partaking in the collective decision to . . . boycott the meal" and concluding "the DHO properly found, regardless of whether Petitioner said anything or not . . . Petitioner contributed to and participated in a tense group dynamic that amounted to a group demonstration.").

Finally, Petitioner claims "the government conflates the expunged incident report written by . . . F. A[u]but . . . with the incident report . . . written by J. Becker[.]" Traverse

at 1.  To the extent Petitioner argues the DHO's conclusion is not supported by some evidence because a separate incident report– the subject of which was Petitioner's alleged refusal of another meal on May 18, 2020 –was expunged, he is incorrect.  The DHO's conclusion was based on, *inter alia*, Officer Becker's Incident Report– containing his firsthand observations of the event –which was further corroborated by video footage and SHU records, therefore, it is sufficiently supported.  *See, e.g.*, *Murray*, 2016 WL 11480161, at *6.  Moreover, as Petitioner recognizes in his Traverse,[3] the DHO was not only aware of, but *acknowledged in the hearing report* the fact that "the incident report that Officer Aubut generated was expunged due to insufficient evidence."  Ex. at 15.  In sum, that the DHO referenced supporting memoranda describing a separate alleged incident which was the subject of a dismissed incident report does not render the factually sound conclusion that petitioner engaged in a group demonstration by refusing a dinner meal tray at or around 4:15 p.m. unsupported.[4]

There is some reliable evidence in the record supporting the DHO's conclusion that Petitioner engaged in a group demonstration at approximately 4:15 p.m. on May 18, 2020.  Because due process requires no more, Petitioner has failed to demonstrate habeas relief is warranted.

### C. Petitioner has Failed to Demonstrate Disciplinary Proceedings were Initiated in Retaliation for his Filing of an Informal Resolution Form

---

[3] *See* Traverse at 2.
[4] See *Haigler v. Chappius*, No. 1:15-CV-0780, 2017 WL 5177722, at *5 (W.D.N.Y. Nov. 8, 2017) (rejecting the "[p]etitioner['s] argu[ment] that his right to due process was violated because the hearing officer relied on the allegations set forth in a dismissed misbehavior report" because "the hearing officer expressly informed petitioner that the dismissed misbehavior report was not a part of the record" and noting the "petitioner ha[d] pointed to no Supreme Court precedent establishing that it is a due process violation for a hearing officer to reference a dismissed misbehavior report.").  Similarly, here, there is no evidence indicating the hearing officer relied on the *expunged incident report* and the hearing officer *expressly acknowledged* that said incident report had been expunged.  *See* Ex. at 15.  While the DHO referenced D. Hensley and F. Aubut's supporting memoranda discussing Petitioner's other alleged refusal of a lunch meal tray– *see* Ex. at 13-14 –there is no indication that the DHO's imposition of sanctions was based on the F. Aubut's expunged incident report, rather than J. Becker's incident report.

Finally, Petitioner appears to suggest he was subjected to the disciplinary process and sanctions as the result of retaliation. Petitioner states:

> The FBOP has no rule requiring a prisoner to eat every meal he is offered by the prison. The FBOP does have a rule precluding retaliation for use of the internal grievance program (the Administrative Remedy Program). FBOP policy statement 5270.09 precludes use of the disciplinary program to retaliate for the use of the internal grievance program.

Pet. at 3; *see also* Pet. at 4 ("the disciplinary report and sanctions should be expunged . . . because DHO Hayden's guilty finding is retaliatory and baseless.").

However, even assuming, *arguendo*, the instant petition is the proper form to address Petitioner's retaliation claim, *and* his retaliation claim is properly exhausted, Petitioner is unable to demonstrate the disciplinary proceedings were initiated in retaliation for Petitioner's filing of the Informal Resolution Form. *Compare Wilson v. Miller*, No. 9:14-CV-1511 (GLS/TWD), 2016 WL 7351593, at *2 (N.D.N.Y. Dec. 16, 2016) ("claims related to conditions of confinement, including access to mail, use of the administrative grievance process and retaliation claims, are more properly brought in a civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).") (citing *Nelson v. Campbell*, 541 U.S. 637, 643 (2004)), *with Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) ("we hold that there is no *Bivens* action for First Amendment retaliation.").

To prove a claim of retaliation, "a prisoner must show that '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (quoting *Gill v.*

*Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).  The Second Circuit has cautioned courts must "approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)) (additional citation omitted).

> The [prisoner] bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the [prisoner] . . . If the [prisoner] carries that burden, the defendants must show by a preponderance of the evidence that they would have disciplined the [prisoner] "even in the absence of the protected conduct" . . . Thus, if taken for both proper and improper reasons, [the disciplinary] action may be upheld if the action would have been taken based on the proper reasons alone.

*Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (first citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977), then citing *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994)) (additional citations omitted).

The fact that Petitioner did, in fact, violate prison rules as charged by the allegedly retaliatory report belies his retaliation claim.  *See Pinson v. Berkebile*, 576 F. App'x 710, 713 (10th Cir. 2014) (affirming the District Court's denial of the petitioner's 28 U.S.C. § 2241 application and "reject[ing petitioner]'s retaliation claim that the guard fabricated [an] incident report" because "'an inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction' when a hearing officer finds that the inmate committed 'the actual behavior underlying that charge' and affords the

inmate 'adequate due process.'") (quoting *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011)).[5, 6]  Here, there is "some evidence" proving Petitioner actually committed a rule violation.  The DHO found Petitioner did commit the act of engaging in or encouraging a group demonstration as charged.  Ex. at 12-13.  Further, as explained above, Petitioner was found guilty only after being afforded adequate due process.  Therefore, it is apparent that Petitioner was disciplined for his misconduct rather than in retaliation for filing a grievance.  *See, e.g.*, *Marino v. Watts*, No. 9:12-CV-0801 (NAM/RFT), 2014 WL 1794588, at *5 n. 5 (N.D.N.Y. May 6, 2014) (noting "[t]here is no constitutional violation where a misbehavior report is motivated by a sufficient proper reason, even if it was also motivated by an improper reason.") (citing *Lowrance*, 20 F.3d at 535).

Additionally, the suggestion of retaliation is further contradicted by the details contained in C.O. Becker's Incident Report.  The Incident Report, dated May 18, 2020, alleged "five inmates agreed to participate in a demonstration by not accepting the meals" and noted "[n]one of the inmates submitted a copout or attempted to resolve this issue through the administrative remedy process."  Ex. at 18.  Of course, as Petitioner identified in his statement to the DHO– *see* Ex. at 30 –Petitioner "did, in fact, file an administrative remedy request vis-a-vis the SHU feed trays on 5/17/20, thus Becker's

---

[5] The Tenth Circuit further explained "the hearing officer found that Pinson committed the misbehavior and that decision comported with due process because some evidence supported the hearing officer's decision" because the hearing officer relied on a "guard's incident report as well as [an] investigating officer's report recounting what he had seen on [] video." *See Pinson*, 576 F. App'x at 713.
[6] *See also, e.g.*, *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) ("claims of retaliation fail if the alleged[ly] retaliatory conduct violations were issued for the actual violation of a prison rule.") (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990)); *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011) ("an inmate cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the inmate was found guilty of the actual behavior underlying that charge after being afforded adequate due process.").

statement that [Petitioner] did not [file an administrative remedy concerning meals] is untrue[.]" *See* Ex. at 29.  However, C.O. Becker's apparent lack of knowledge that Petitioner had filed an Informal Resolution Form plainly belies any suggestion that C.O. Becker filed an Incident Report in retaliation for Petitioner's use of the administrative remedy process.

In sum, the record lacks evidence suggesting a connection between Petitioner's use of the administrative remedy process and the commencement of disciplinary proceedings.  Therefore, to the extent Petitioner suggests he was subjected to the disciplinary process in retaliation for his submission of the May 17, 2020, Informal Resolution form, he is mistaken.  Accordingly, the undersigned recommends denying any retaliation claim.

V.  **CONCLUSION**

**WHEREFORE**, it is

**RECOMMENDED** that the petition, Dkt. No. 1, be **DENIED and DISMISSED** in its entirety; and it is further

**RECOMMENDED** that no Certificate of Appealability ("COA") shall issue because the Petition was brought under 28 U.S.C. § 2241 and a certificate of appealability is not required for Petitioner to appeal the denial of his Petition.  *See Murphy v. United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (holding the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to § 2241 petitions).

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Petitioner, along with copies of unpublished decisions

cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

DATED: April 24, 2023

       Syracuse, New York

Thérèse Wiley Dancks
U.S. Magistrate Judge