UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

JOSHUA G. STEGEMANN,

                              Petitioner,

        -against-                                        9:20-CV-1247 (LEK/TWD)

FCI RAY BROOK, WARDEN,

                              Respondent.

_____

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.    INTRODUCTION

On October 9, 2020, Petitioner Joshua G. Stegemann brought a petition seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2241. Dkt. No. 1 ("Petition"). Petitioner seeks "expungement of a disciplinary report" and "restoration of 27 days [of] Good Time Credits" taken after a disciplinary hearing. <u>Id.</u> at 1. On April 24, 2023, the Honorable Thérèse Wiley Dancks, United States Magistrate Judge, filed a report and recommendation recommending denial and dismissal of the Petition in its entirety. Dkt. No. 11 ("Report and Recommendation"). Pending before the Court are Petitioner's objections to the Report and Recommendation. Dkt. No. 12 ("Objection"). Respondent has filed a memorandum of law opposing the Objections. Dkt. No. 13.

For the reasons discussed below, the Court adopts the Report and Recommendation in its entirety, and the Petition is dismissed and denied.

## II.    BACKGROUND

The Court presumes familiarity with the factual record as discussed in the Report and Recommendation. <u>See</u> R. & R. at 2–5.

1

In the Report and Recommendation, Judge Dancks addressed Petitioner's arguments and found that dismissal was merited for three reasons. First, Judge Dancks recommended finding that the delayed service of Officer Becker's report did not violate due process because the report was served more than twenty-four hours in advance of his disciplinary hearing. See id. at 7–8. Second, Judge Dancks recommended finding that the decision issued by the Discipline Hearing Officer ("DHO") concluding that Petitioner engaged in a group demonstration was supported by sufficient evidence under the deferential "some evidence" standard. See id. at 8–13. Third, Judge Dancks recommended finding that Petitioner failed to demonstrate that the disciplinary proceedings were initiated as retaliation for his use of the internal grievance procedure. See id. at 13–17. As a result, Judge Dancks recommended dismissing the Petition in its entirety.

Petitioner filed objections to the Report and Recommendation on May 1, 2023. See Obj. In his Objections, Petitioner focuses on the second section of the Report and Recommendation, which found that the DHO's decision was supported by sufficient evidence. See id. at 1–2. Specifically, he objects to Judge Dancks' citation of McClean v. Terrell,[1] which he argues can be distinguished on the facts and is thus inapplicable to his case. See id. Petitioner does not object to either the first or third sections of the Report and Recommendation.

## III.   STANDARDS OF REVIEW

"Within fourteen days after being served with a copy [of the Magistrate Judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1)(C); see also L.R. 72.1(b). "When a party files specific objections to a magistrate judge's report-recommendation,

---

[1] McLean v. Terrell, No. 11-CV-401, 2012 WL 2457962 (E.D.N.Y. Jun. 27, 2012), aff'd sub nom. McLean v. Holder, 550 F. App'x 49 (2d Cir. 2014).

the district court makes a 'de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" Walker v. Artus, 998 F. Supp. 2d 18, 24 (N.D.N.Y. 2014) (citing 28 U.S.C. § 636(b)(1)). However, if no objections are made, a district court need only review a report and recommendation for clear error. See DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) ("The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record."). Clear error "is present when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." Rivera v. Fed. Bureau of Prisons, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019) (internal citations omitted). Upon review, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The Court presumes familiarity with the standards governing the applicability of habeas relief as discussed by Judge Dancks in her Report and Recommendation. See R. & R. at 6–7.

## IV.   DISCUSSION

### A.  Sufficiency of the Evidence

Petitioner objects to the section of the Report and Recommendation addressing whether the DHO's conclusion was supported by sufficient evidence. See Obj. at 1–3.  Accordingly, the Court reviews this section de novo. See Walker, 998 F. Supp. 2d at 24.

"[P]rison discipline decisions affecting an inmate's liberty interest cannot be 'imposed arbitrarily' but must be 'supported by some evidence in the record.'" Sira v. Morton, 380 F.3d 57, 76 (2d Cir. 2004) (quoting Superintendent v. Hill, 472 U.S. 445, 454 (1985)). However, "only 'reliable' evidence can constitute 'some evidence.'" Id. (quoting Luna v. Pico, 356 F.3d

481, 488 (2d. Cir. 2004)). "Due process does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion." Elder v. McCarthy, 967 F.3d 113, 129–30 (2d Cir. 2020). "The [s]ome evidence standard has been held to be satisfied in cases where the hearing official relies almost entirely on an incident report written by a non-testifying officer." Reeves v. Perdue, No. 11-CV-442, 2014 WL 2177405, at *4 (N.D.N.Y. May 23, 2014) (collecting cases).

The DHO found that there was sufficient evidence to support a finding that Petitioner violated "prohibited act 212; Engaging in or Encouraging a Group Demonstration." Dkt. No. 8-2 ("Exhibits") at 13. In coming to this determination, the DHO reviewed Officer Becker's written report; supporting memoranda from Staff Member D. Hensley, Staff Member F. Aubut,[2] Staff Member R. Wallace, and Staff Member J. Roy; the Special Housing Unit Record; video footage from the Bravo range in the Special Housing Unit; and Petitioner's written and verbal statements regarding the incident. See id. at 13–16.

Petitioner takes issue with the consideration of Officer Becker's written report, stating that "DHO Hayden found [Petitioner] guilty and sanctioned him in spite of the fact that the 2 guards that distributed the meals—C.O. Wallace and C.O. Roy—directly contradict the claims of Becker, who did not distribute the meals." Pet. at ¶ 5. The Court notes multiple issues with Officer Becker's report. First, the report fails to identify which incarcerated individuals said what; instead, the report merely states that the incarcerated individuals who declined the lunch meal "voiced their opinions that the temperature and quality of the meal was unacceptable." Exs.

---

[2] The Court notes that this report was expunged on May 21, 2020, for lack of sufficient evidence, see Pet. at ¶ 3, and that this fact was discussed by the DHO in the report, see Exs. at 15.

at 18. Second, the report states that none of those involved attempted to resolve the issue through the administrative remedy process, see id., despite the fact that Petitioner filed a grievance related to food service the previous day, see id. at 29 (reproducing Petitioner's Informal Resolution Form regarding the size of meals).

However, the Court does not agree with Petitioner that Officer Becker's report necessarily contradicts the reports of C.O. Wallace and C.O. Roy. Officer Becker stated the incarcerated individuals expressed their reasons for declining their trays during the dinner meal, see id. at 18, while C.O. Wallace and C.O. Roy stated that the incarcerated individuals remained silent while declining their dinner trays, see id. at 24–25. However, since Officer Becker does not expressly attribute particular statements to specific individuals, the Court cannot conclude that the reports directly contradict each other regarding statements made by Petitioner. Additionally, as discussed in the Report and Recommendation and contrary to Petitioner's assertions, there is some evidence that Officer Becker was present during the dinner tray service. See R. & R. at 11 ("As discussed above, Officer Becker's Incident Report, SHU records, and video evidence reviewed by the DHO each provide some evidence that Officer Becker was, in fact, present for the attempt to serve food trays at or around 4:15 p.m. on May 18, 2020."). Accordingly, the Court finds that the DHO did not improperly consider Officer Becker's report.

Even if the DHO improperly considered Officer Becker's report, there is still some evidence to support the finding that Petitioner engaged in a group demonstration. The reports from C.O. Wallace and C.O. Roy (collectively, "Supporting Memoranda") state that both Petitioner and others refused their meals. See Exs. at 24 (memorandum from C.O. Roy stating that Petitioner and another incarcerated individual both refused to take dinner trays); id. at 25 (memorandum from C.O. Wallace stating the same); see also id. at 22 (memorandum from C.O.

5

Hensley stating that multiple individuals including Petitioner refused to accept their lunch meals and noting that there "were no other problems during the lunch meal and the problem specifically relates to the inmates on Bravo Range engaging in a group demonstration and collectively refusing to accept their lunch trays") While the conclusory leap from mere refusal of a meal to participation in group demonstration gives the Court some pause, the fact remains that, under the incredibly deferential "some evidence" standard, the Court cannot find that no reliable evidence supported the DHO's conclusion.

Petitioner argues that, in determining that the DHO's report was supported by some evidence, Judge Dancks incorrectly relied on McClean, 2012 WL 2457962. See Obj. at 1. In McClean, the petitioner was part of a group of incarcerated individuals who collectively decided to boycott a ceremonial meal and hold their own religious ceremony instead. See McClean, 2012 WL 2457962, at *5. The court found that the disciplinary board's decision was supported by some evidence because the "DHO relied on the incident report, the investigative memorandum from SIA Brown, the report from Staff member Inman who, along with Chaplain Prickett, had spoken to inmates in the chapel on the day of the incident, and the memorandum from Chaplain Prickett describing the events that transpired on that day." Id. at *5. Petitioner is correct that there are factual differences between McClean and this case. See Obj at 1. Indeed, the relative strength of the evidence in Petitioner's case seems to be weaker since, as Petitioner points out, the plaintiff in McClean voluntarily traveled to a space in which a protest was conducted, while Petitioner merely continued to sit in his assigned cell in the SHU. See id. at 2. However, the "some evidence" standard used in McClean is a deferential standard and is met here. As described above, even given the shortcomings within the supporting evidence and the conclusory statements in the DHO's report, there is still some evidence supporting the DHO's finding.

Additionally, Petitioner contests the facts stated in the Supporting Memoranda, saying he "gave no reason for refusing the meal, and neither did any of the other prisoners." Id. However, Petitioner does not contest that he refused the meal, nor does he contest that others similarly refused their meals. See Harrison v. Querns, No. 06-CV-296, 2008 WL 495505, at *4 (W.D.N.Y. Feb. 21, 2008) (finding that, regardless of whether an individual participated in a protest "as an instigator as charged in [the] misbehavior report, or as a mere participant, consistent with Plaintiff's own disciplinary hearing testimony," there was "some evidence" to support the DHO's finding that the plaintiff had violated FBOP policy). The undisputed evidence that Petitioner refused his meal in conformity with others in the Bravo Range constituted "some evidence" that Petitioner engaged in some group demonstration.

Accordingly, the Court finds that the DHO report was supported by sufficient evidence.

**B. Due Process and Retaliation**

Since neither Petitioner nor Respondent have objected to the sections of the Report and Recommendation addressing service of Officer Becker's report or alleged retaliation, the Court reviews those sections for clear error. See DiPilato, 662 F. Supp. 2d at 339.

Petitioner alleges that, since Officer "Becker's report was served in excess of 24 hours after the alleged incident in violation of" Federal Bureau of Prisons ("FBOP") policy, his due process rights were violated. Pet. at ¶¶ 4, 10. Due process requires that an incarcerated individual "is provided written notice of the disciplinary charges at least twenty-four hours in advance of the hearing" to determine loss of good time credits. Carter-Mitchell v. Terrell, No. 12-CV-2361, 2017 WL 375634, at *8 (E.D.N.Y. Jan. 26, 2017) (citing Homen v. Hasty, 229 F. Supp. 2d 290, 295 (S.D.N.Y. 2002)). Officer Becker wrote his report on May 18, 2020, though Petitioner did not receive the report until May 20, 2020. Pet. at ¶ 4. Even assuming that the delayed service of

Officer Becker's report violated FBOP policy, this delay alone does not rise to the level of a constitutional deprivation since Petitioner received the report more than twenty-four hours in advance of the hearing. See Rahman v. Wingate, 740 F. Supp. 2d 430, 432 (S.D.N.Y. 2010) (finding that a petitioner's due process rights were not violated even though he did not receive an incident report within twenty-four hours as required by FBOP regulations). Accordingly, the Court finds no clear error and adopts the portion of the Report and Recommendation addressing Petitioner's due process argument.

Petitioner also argues that the disciplinary proceeding began in response to his Informal Resolution Form and thus constituted retaliation in violation of his First Amendment Rights. See Pet. at ¶¶ 8–9. To state a claim for retaliation, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009). A court is unlikely to find that a disciplinary report was motivated by retaliation if the internal review process found that the incident report was due to an improper activity. See Hoever v. Fletcher, 696 F. App'x 480, 481 (11th Cir. 2017) ("[A] prisoner cannot state a claim of retaliation for a disciplinary charge involving a prison rule infraction when the prisoner was found guilty of the actual behavior underlying that charge after being afforded due process.") (citing O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011)); Pinson v. Berkebile, 576 F. App'x 710, 713 (10th Cir. 2014) (rejecting retaliation claim where the petitioner was found to have committed the misbehavior discussed in the report); Marino v. Watts, No. 12-CV-801, 2014 WL 1794588, at *5 n.5 (N.D.N.Y. May 6, 2014) (finding no constitutional violation of retaliation where plaintiff was found to have committed the violation listed in the misbehavior report) (citing Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994)).

8

For the purposes of argument, the Court presumes that this Petition is the proper vehicle to address retaliation and that Petitioner has exhausted his administrative remedies. See R. & R. at 14. However, since Petitioner's prison disciplinary conviction was supported by some evidence, as discussed above, the Court is unable to conclude that retaliation was the predominant motive of the disciplinary report. Accordingly, the Court finds no clear error and adopts the finding of the portion of the Report and Recommendation addressing Petitioner's retaliation argument.

In summary, the Court finds that the DHO report was supported by sufficient evidence, the delayed service of Officer Becker's report did not violate due process, and the disciplinary proceeding was not primarily motivated by retaliation. While the Court declines to issue a certificate of appealability at this time, Petitioner is advised that a certificate of appealability is not required for an incarcerated individual in a federal prison to appeal the denial of a petition brought under Section 2241. See Murphy v. United States, 199 F.3d 599, 601 n.2 (2d Cir. 1999).

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Report and Recommendation, Dkt. No. 11, is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that the Petition, Dkt. No. 1, is **DENIED and DISMISSED** in its entirety; and it is further

**ORDERED**, that no Certificate of Appealability shall issue; and it is further

**ORDERED**, that the Clerk shall close this action; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:    April 24, 2024
                 Albany, New York

LAWRENCE E. KAHN
United States District Judge